[Cite as *State v. Castle*, 2016-Ohio-993.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY


STATE OF OHIO,

     PLAINTIFF-APPELLEE,                    CASE NO. 6-15-11

     v.

DONALD CASTLE,

                                  **O P I N I O N**

     DEFENDANT-APPELLANT.


Appeal from Hardin County Common Pleas Court
Trial Court No. 20152049CRI

**Judgment Affirmed**

Date of Decision:   March 14, 2016


APPEARANCES:

    *F. Stephen Chamberlain* for Appellant

    *Brian S. Decker* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Donald Castle, appeals the judgment of the Court of Common Pleas of Hardin County convicting him of two counts of rape and sentencing him to eight years in prison. On appeal, Castle argues that the trial court erred by imposing consecutive sentences. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On April 16, 2015, the Hardin County Grand Jury returned a nine-count indictment against Castle charging him with two counts of rape in violation of R.C. 2907.02(A)(1)(c), a felony of the first degree; four counts of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree; one count of rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree; one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree; and one count of gross sexual imposition in violation of R.C. 2907.05(A)(5), a felony of the fourth degree. Castle entered pleas of not guilty to all of the charges.

{¶3} As the result of plea negotiations, Castle changed his plea to guilty as to counts one and three of the indictment. Specifically, Castle pleaded guilty to one count of rape in violation of R.C. 2907.02(A)(1)(c), a felony of the first degree, and one count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree. In exchange, the State agreed to dismiss the remaining counts in the indictment. The court accepted the plea of guilty to both counts. A sentencing

hearing was held on September 2, 2015. The State was the first to speak regarding the sentencing factors. The State highlighted the psychological harm of the victim, Castle's ex-wife, Castle's position in the community as a probation officer and how his position led to more opportunity for abuse, how Castle minimalized his conduct, and lacked genuine remorse for his actions.

{¶4} After the State gave its arguments regarding the statutory sentencing factors, the victim[1] was permitted to speak before the court. She stated that Castle had manipulated her from the beginning of their relationship, starting in 2009. According to her, Castle told her that her dying husband had asked Castle to protect her and her children.

{¶5} Prior to their marriage, Castle had sex with the victim while she was sleeping, which was the alleged conduct in count one of the indictment. Castle knew that the victim was using sleep medication due to a medical condition, which rendered her unconscious. After Castle was confronted by the victim, she stated that Castle had promised never to have sex with her again while she was asleep. Trusting Castle, she decided to go through with their wedding. She continued, "What was the word you started saying? You were going to be my protector. So I went ahead with the wedding. What we really needed was protection from you." Sep. 2, 2015 Hrg., p. 10.

---

[1] Although the original nine counts alleged four different victims, counts one and three pertained solely to this particular victim.

{¶6} The victim said that although she was relieved that he would not be able to hurt anyone else, she was still afraid of the dark, was uncomfortable lying in bed, and had a hard time trusting anyone, especially law enforcement officials. Her son, one of the alleged victims associated with the other counts of the indictment, continued to tell her stories about what Castle did to him as well. She stated that she cannot stop blaming herself for bringing Castle into their lives.

{¶7} She described how scared and uncomfortable Castle made her feel when known drug addicts, who were probationers under Castle, would come to their home and were given money by Castle. When she brought up how uncomfortable Castle's actions made her feel, Castle would tell her, "You stick to medical and I'll stick to the law stuff, because you don't understand law." *Id.* at p. 14.

{¶8} The underlying facts to both counts of rape involved Castle having sex with his ex-wife while she was unconscious due to sleep medication and without her consent. The victim recalled what she used to ask Castle repeatedly almost every morning. She said, "I kept asking you that December I was so sick, December of '13, how many mornings did I wake up and ask you if you raped me through the night again? I don't think I can count them [Castle.] I asked you repeatedly, almost every day, multiple times in December, did you rape me again? Did you rape me again?" *Id.* at p. 15-16. She explained that she was forced to

leave her church because everyone there accused her of lying and supported Castle, instead of his victims. She concluded by asking the court to impose the maximum sentence allowed, 22 years in prison.

{¶9} Defense counsel was next to argue. Counsel argued that the victim exaggerated the harm to her and that she was not actually brainwashed. He stated that Castle had no prior record, adult or juvenile. Counsel pointed out that Castle tested low on the issue of potential for recidivism. Counsel argued that Castle's position in the community showed how much of a benefit he brings to society.

{¶10} Castle decided to speak at the hearing and stated that he took full responsibility for what he had done and that he was genuinely remorseful for his actions.

{¶11} The trial court began its imposition of Castle's sentence by stating that it had considered the statutory factors and the overriding purposes and principles of sentencing. As to count one, the court sentenced Castle to a three year prison sentence and a $1,000 fine. As to count three, the court sentenced Castle to a five year prison sentence and a $1,000 fine. Regarding count three, the court noted that the offense occurred after Castle had married the victim. Specifically, the court stated,

> The Court sees this as a different situation. There has been evidence before the Court that after the first [rape], the evidence that I have here is that promises were made that this wouldn't happen again. After that date, the parties entered into the sanctity of the

> relationship of marriage, and even though the standards of marriage are declining in the world around us, still the Court finds no relationship that is more based upon trust in each other than that intimate relationship of marriage, and I find that Mr. Castle has violated that, the sanctity of marriage, and therefore the penalty for the count three of the indictment is more serious because the Court considers it to be a more serious offense under the circumstances.

*Id.* at p. 29-30.

{¶12} Next, the court considered whether Castle's sentences would run concurrently or consecutively. Initially, the court found that the first two requirements were met to impose consecutive sentences. Specifically, that consecutive sentences "are necessary to protect the public from future crime or to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender has posed or continues to pose to the public." *Id.* at p. 31. Therefore, to impose consecutive sentences, the court had to find one of three factors. The court found that two of the three factors were not met: (1) that the offenses were committed while Castle was awaiting trial and (2) that Castle's criminal history made it necessary to impose consecutive sentences to protect the public. However, the court found that the remaining factor was present – that "multiple offenses * * * were committed as part of a course of conduct, and that the harm caused by the two or more offenses was so great or so unusual that no single prison term for any of the offenses

committed would adequately reflect the seriousness of the offender's conduct."

*Id.* at p. 32. The court continued,

> The Court believes very seriously, once again, I'm drawing a distinction between the first count having been committed before the parties were married, and then the second count having been committed, again, after they entered into that relationship, and I believe that a single prison term would not address the unusual nature of these two counts.

*Id.* Based on the court's findings, the court ordered that the two sentences be served consecutively. The court also ordered the fines be paid cumulatively, for a total of $2,000. Castle was instructed by the court that he was to be classified as a Tier III sex offender and was made aware of his registration requirements upon release.

{¶13} The court memorialized its decision by entry on September 4, 2015. In its entry, the court reiterated

> that consecutive sentencing is necessary to protect the public from future crime or to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The Court further finds that: At least at least [sic] two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(Docket No. 43, p. 3). The same punishments were imposed.

{¶14} Castle filed this timely appeal, presenting the following assignment of error for our review.

*Assignment of Error*

**THE TRIAL COURT BELOW COMMITTED ERROR, PREJUDICIAL TO THE DEFENDANT IN RULING THAT THE SENTENCES TO THE OHIO DEPARTMENT OF REHABILITATION AND CORRECTION BE IMPOSED AND RUN CONSECUTIVELY WITH EACH OTHER.**

{¶15} In his sole assignment of error, Castle argues that the trial court erred by imposing consecutive sentences. We disagree.

{¶16} "A trial court's sentence will not be disturbed on appeal absent a defendant's showing by clear and convincing evidence that the sentence is unsupported by the record or otherwise contrary to law." *State v. Barrera*, 3d Dist. Putnam No. 12-12-01, 2012-Ohio-3196, ¶ 20. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶17} "The revisions to the felony sentencing statutes under H.B. 86 now require a trial court to make specific findings on the record, as set forth in R.C. 2929.14(C)(4), when imposing consecutive sentences." *State v. Noble*, 3d Dist. Logan No. 8-14-06, 2014-Ohio-5485, ¶ 12, citing *State v. Hites*, 3d Dist. Hardin No. 6-11-07, 2012-Ohio-1892, ¶ 11. R.C. 2929.14(C)(4) states that

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> * * *
>
> At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> * * *.

If a court imposes consecutive sentences, Crim R. 32(A)(4) requires that it "must state the required findings as part of the sentencing hearing, and by doing so it affords notice to the offender and to defense counsel." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 30. It is also preferred that the court includes its statutory findings in the sentencing entry "because a court speaks through its journal." *Noble* at ¶ 13, citing *Bonnell* at ¶ 29, citing *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, ¶ 47. However, the court need neither state its reasoning to support its findings nor must it provide a "talismanic incantation" of R.C. 2929.14(C)(4). *Bonnell* at ¶ 37.

{¶18} On appeal, Castle does not argue that the trial court failed to make the necessary findings to impose consecutive sentences. Rather, Castle argues that "there is no evidence in the record to support that the harm to the victim was so great or unusual that would provide a basis for the trial court to impose consecutive sentences on [Castle.]" Appellant's Brief, p. 10. Upon a review of the record, we find that there were sufficient facts presented to support the court's findings.

{¶19} The victim discussed, at great lengths, the harm she suffered as a result of the rapes. She talked about how Castle manipulated her mind from the onset of their relationship. She claimed that she was an emotional wreck after the death of her first husband and that Castle exploited this to get closer to her. After the first time Castle raped her, the victim was given assurances by Castle that he would never do it again. However, he broke that vow and continued to rape her throughout their marriage. Although time had passed since she came forward with the accusations, the victim explained that she still feared the dark, felt uncomfortable lying in her own bed, and had serious trust issues, especially with anyone in law enforcement. This leads to another unsettling fact.

{¶20} It also appears that Castle used his status, as a member of law enforcement, as leverage against the victim. The victim stated that whenever she questioned Castle's actions he would tell her that she does not understand the law

and that he was the law. She explained that this made her feel like her situation was hopeless and that no one in the law enforcement community would help her.

{¶21} Further, not only did Castle cause great harm to the victim physically and psychologically, he also harmed her status in her church. Members of her church could not believe how Castle, someone held in such high esteem, could possibly have done the terrible acts that he was accused of committing. As a result, the victim was forced to leave the church. She explained that this was especially painful because one of the last wishes of her deceased husband was to remain at that church.

{¶22} In addition to the victim's own statements suggesting how the harm done was so great or unusual, the trial court also stated its reasoning for imposing consecutive sentences. The court found Castle's conduct unusual in the fact that the first offense occurred before Castle and the victim were married; that after the first rape occurred, Castle vowed never to do it again; and that the second offense occurred after Castle and the victim were married. The court's reasoning surrounded the idea that marriage was the ultimate form of trust and that Castle had broken that trust by raping the victim, his then wife, again.

{¶23} Castle argues that the court's argument lacks any legal support for finding that this makes the harm so great or unusual to impose consecutive sentences. Assuming, arguendo, that Castle's argument has merit, this fact does

not warrant reversal.[2]  So long as the court's findings are supported by the record, the court's imposition of consecutive sentences will not be found to be contrary to law.  *See Bonnell*, 2014-Ohio-3177 at ¶ 29.  As stated supra, the record supports a finding that the harm to the victim was so great or unusual based on the victim's statement at the sentencing hearing.  Moreover, the sentencing entry reflects the court's same findings.  Thus, Castle has failed to prove by clear and convincing evidence that his sentence is contrary to law.

{¶24} Accordingly, we overrule Castle's sole assignment of error.

{¶25} Having found no error prejudicial to the appellant, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**

---

[2] This court is unaware of any precedent limiting our review of a trial court's findings to impose consecutive sentences to the reasons provided by the trial court.  It is well established that a trial court need not provide any reason at all to support its findings that the harm to the victim was so great or unusual. *See Noble*, 2014-Ohio-5485 at ¶ 13, citing *Bonnell*, 2014-Ohio-3177 at ¶ 30.  The standard is very clear. "* * * [A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29.